

FILED

03/08/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 22-0037

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## OP 22-0037

KIP HARTMAN,

    Petitioner,

v.

MONTANA NINETEENTH JUDICIAL
DISTRICT COURT, LINCOLN COUNTY,
HON. MATTHEW CUFFE, Presiding,

    Respondent.

FILED

MAR 0 8 2022

Bowen Greenwood
Clerk of Supreme Court
State of Montana

**O R D E R**

Pursuant to M. R. App. P. 14(3), Petitioner Kip Hartman seeks a writ of supervisory control over the Nineteenth Judicial District Court, Lincoln County, in Cause No. DC-19-75. Hartman asserts that retrial of the criminal prosecution against him after a mistrial was declared in the previous trial is barred by the double jeopardy clause of the Fifth Amendment to the United States Constitution. Hartman requests this Court issue a writ of supervisory control prohibiting the retrial. The State responds that because the District Court declared a mistrial due to manifest necessity, retrial does not constitute double jeopardy.

The State charged Hartman with multiple counts arising from alleged fraudulent securities transactions. The District Court allotted nine days for the trial and advised the parties that their respective time would be divided equally. The District Court kept meticulous track of the parties' time and repeatedly reminded the parties during trial as to how much of their allotted time was remaining. On the second day of trial, the District Court expressed concern about the time being expended and reminded the parties that cross-examination was being counted in the equal time calculation. The District Court had the following exchange with Hartman's counsel:

> THE COURT: There's a couple of things I wanted to make sure we all understood as we go forward that just kind of triggered, based on what [Hartman's counsel] had indicated when I asked him how much [cross-

examination] he had left. Now, every night I'm getting a tally. I've got in my notes when things start, when things stop. You indicated at the beginning of this you wanted equal time. Your cross-examination is counting as your equal time. You understood that.

[HARTMAN'S COUNSEL]: Understood. And I've been tracking it myself.

THE COURT: I just wanted to make sure we were clear as we went forward with those things.

On Monday of the second week of trial, the District Court began by specifically advising both the State and Hartman exactly how much time they had left "[f]or the rest of your cross-examinations, cases and rebuttal." The District Court advised the State that it had ten hours and advised Hartman that he had fourteen hours. Hartman's counsel replied, "the 14 hours/ten hours, that works for me."

The State rested its case the following day. After the jury was excused, the District Court again reminded the parties to be mindful of their allotted time and advised that it would have a figure as to how much time each party had remaining the following morning. Hartman's counsel objected that Hartman was being denied his state and federal due process rights to present a defense because he could not complete his case in the remaining time. Hartman's counsel also suggested that he could not render effective assistance of counsel in the remaining time and requested additional time. The District Court reminded Hartman's counsel that he had told him on Monday morning that he had fourteen hours left "to use however you want." The District Court reminded Hartman's counsel that, at the pretrial hearing, he advised the parties as to how much time they would have, that the parties would have the same amount of time, and that cross-examination would count against their time. The State responded that it was not taking a position on Hartman's request for more time but requested that if Hartman was awarded more time, the State be awarded proportional time as well. The District Court stated it would take Hartman's request for more time under advisement and would address it the following morning. When court resumed the following morning, the District Court advised the parties of their respective time remaining and refused to add additional time.

2

On the eighth day of trial, Hartman's counsel announced that he intended to call Hartman to testify but that he could not complete Hartman's testimony in the time he had remaining. Hartman's counsel acknowledged that he had agreed to the time that was allotted after it had been explained how the time would be calculated for each side, and that at the pretrial he "wanted to make sure [he] got the same amount of time" as the State. Regarding the insufficient time remaining, Hartman's counsel stated:

> He [Hartman] gets his opportunity to talk, and I've taken it away from him. I have provided ineffective assistance. I have failed to provide or safeguard his state Constitutional right to the assistance of counsel, because I have failed to leave enough time for him to testify.

The District Court inquired: "So your request is allow Mr. Hartman to testify for as long as he wants. Is that right?" To which Hartman's counsel replied: "Not as long as he wants. As long as he needs." When pressed for a specific amount of time he anticipated Hartman would need, his counsel initially indicated three hours, but when the District Court speculated as to how that would be timed, Hartman's counsel stated, "I would submit rather than time it, that the Court restrain it with [Rules] 401, 402 and, most importantly, 403." The State responded that if Hartman was allowed an additional three hours for direct examination, it was concerned that it be granted additional time as well. The District Court ordered the parties to appear for a formal argument on Hartman's motion the following morning.

At the hearing the following morning, Hartman offered no further argument. The State took no position on Hartman's motion for more time, other than to request that it be given an equal amount of time for cross-examination. Noting that Hartman had the right to testify, the District Court agreed with Hartman's counsel that because of "[Hartman's] attorney['s] conduct in this case, we are in a situation where we cannot complete [the trial] in the allotted time." The District Court noted:

> We also find our situation, which everybody knew about because the Court has been very clear as to our schedule, that we have a criminal jury trial scheduled next week. Now, I also have fitness to proceed evaluations for people who are incarcerated. I have hearings for incarcerated Defendants as to

3

their current counsel. Both of those are set. They all have Constitutional rights that they are entitled to have this Court protect. The week following we have another three-day criminal trial and additional hearing in the same vein for criminal Defendants; orders of protection, all of which statutorily have to be recognized and have to be dealt with.

. . .

[K]nowing that Mr. Hartman has that right [to testify], he gets to testify, and he should testify for as long as he feels is appropriate and necessary, we don't have the time to get this done within the allotted period of time. I have no choice but to declare a mistrial. I have to. Because he has those rights. And I can't put it any place else.

After the District Court determined that it had to declare a mistrial to protect Hartman's constitutional right to testify, Hartman's counsel suddenly offered to complete Hartman's testimony in ninety minutes, despite having previously stated that Hartman's testimony should not be constrained by a particular time limit but only by Montana Rules of Evidence 401, 402, and 403. The District Court recessed to consider Hartman's proposal. After the recess, the District Court discussed at length the untenable situation that had been created. The District Court concluded it did not believe it could do anything other than declare a mistrial to serve the interests of justice.

After the mistrial was declared, the District Court denied Hartman's motion to dismiss the charges on double jeopardy grounds.

Hartman petitions for a writ of supervisory control, arguing that the District Court abused its discretion by declaring a mistrial and the currently scheduled retrial is barred by double jeopardy. The State responds that the mistrial was required by manifest necessity and is not barred by double jeopardy.

"Supervisory control is an extraordinary remedy," but may be justified "when urgency or emergency factors exist making the normal appeal process inadequate, when the case involves purely legal questions," and when one or more of the following three circumstances exist: (a) the "other court is proceeding under a mistake of law and is causing a gross injustice; (b) [c]onstitutional issues of state-wide importance are involved; (c) [t]he other

4

court has granted or denied a motion for substitution of a judge in a criminal case." Mont. R. App. P. 14(3). We have previously deemed it appropriate to exercise supervisory control in cases implicating double jeopardy. *See City of Billings ex rel. Huertas v. Billings Mun. Court*, 2017 MT 261, ¶ 2, 389 Mont. 158, 404 P.3d 709; *Keating v. Sherlock*, 278 Mont. 218, 924 P.2d 1297 (1996).

We review a trial court's declaration of a mistrial for an abuse of discretion. *State v. Cates*, 2009 MT 94, ¶ 21, 350 Mont. 38, 204 P.3d 1224. "A district court abuses its discretion if it acts arbitrarily without conscientious judgment or exceeds the bounds of reason resulting in substantial injustice." *State v. Kaarma*, 2017 MT 24, ¶ 6, 386 Mont. 243, 390 P.3d 609 (quotation omitted). This Court will affirm a trial court's decision to declare a mistrial if the court acted rationally and responsibly. *Cates*, ¶ 21. A district court's denial of a motion to dismiss criminal charges on double jeopardy grounds presents a question of law that we review for correctness. *Cates*, ¶ 22 (citations omitted).

During trial, Hartman's counsel acknowledged that he had provided ineffective assistance of counsel by failing "to provide or safeguard [Hartman's] state [c]onstitutional right to the assistance of counsel, because [he had] failed to leave enough time for [Hartman] to testify." The District Court was then tasked with finding the best way to mitigate Hartman's counsel's ineffective assistance. Ultimately, the District Court concluded the only option was to declare a mistrial.

In his Petition before this Court, Hartman fails to acknowledge his own counsel's ineffective assistance in creating the dilemma the District Court faced and argues instead that "[t]he trial time limits and mistrial were the product of the court's desire to achieve efficiency and preserve its schedule." But the time allotted for trial was known to all sides before trial commenced, how the time would be apportioned and the limits in place were known from the outset, the District Court meticulously tracked the time each party was using, and the District Court continually reminded the parties how much time they had remaining. Correct management of the time allotted was Hartman's counsel's responsibility which, as he acknowledged at trial, he failed to do. Because of this failure, the District Court

5

was presented with one of three options: (1) adhere to the allotted time and ground rules that all parties had agreed to prior to trial and truncate Hartman's testimony, which Hartman's counsel stated at trial would be the result of ineffective assistance on his part; (2) abandon the allotted time and ground rules that all parties had agreed to prior to trial and allow the parties additional time, in disregard of the constitutional rights of other parties who had matters pending before the court; or (3) declare a mistrial.

If Hartman was convicted as a result of the District Court electing option one and limiting Hartman's testimony to the time he had remaining, Hartman's counsel had already made it clear that he would pursue a claim of ineffective assistance of counsel. If Hartman's ineffective assistance claim was successful, Hartman's conviction would be vacated and the matter remanded for a new trial. Hartman's remedy would not be reversal without retrial. "[A] remedy must 'neutralize the taint' of a constitutional violation, while at the same time not grant a windfall to the defendant." *Lafler v. Cooper*, 566 U.S. 156, 170, 132 S. Ct. 1376, 1388-89 (2012). It would be ironic, to say the least, if the District Court's alleged abrogation of Hartman's constitutional right to testify could result in his retrial, but the District Court's protection of the same right could not. Hartman is not entitled to such a windfall.

Had the District Court elected option two and granted Hartman and the State additional time to complete Hartman's testimony, this would have jeopardized the rights of other litigants with their own pending matters. When the District Court declared the mistrial, it noted that it had a criminal jury trial scheduled the following week, as well as fitness to proceed evaluations and other hearings for incarcerated defendants. The District Court correctly observed, "[t]hey all have [c]onstitutional rights that they are entitled to have this Court protect." What Hartman dismisses as the "court's desire to achieve efficiency and preserve its schedule," is the District Court's conscientious protection of the constitutional rights of all parties before it, including Hartman.

"Manifest necessity is present when particular circumstances manifest a necessity for [terminating the trial], and when failure to discontinue would defeat the ends of justice." *Cates*, ¶ 33 (citations and internal quotation marks omitted). The record here reflects that the

District Court was placed in an untenable situation, conscientiously considered the options available to it, and correctly determined that circumstances necessitated terminating the trial to protect Hartman's constitutional rights. The District Court did not abuse its discretion by declaring a mistrial.

IT IS ORDERED that Hartman's petition for writ of supervisory control is DENIED and DISMISSED.

The Clerk is directed to provide immediate notice of this Order to counsel for Petitioner, all counsel of record in the Nineteenth Judicial District Court, Lincoln County, Cause No. DC-19-75, and the Honorable Matthew J. Cuffe, presiding.

DATED this 8 day of March, 2022.

Justices

7